**IT IS ORDERED as set forth below:**

**Date: September 30, 2020**



Susan D. Barrett
United States Bankruptcy Judge
Southern District of Georgia

```
                IN THE UNITED STATES BANKRUPTCY COURT

                              FOR THE

                   SOUTHERN DISTRICT OF GEORGIA
                          Augusta Division


IN RE:                              )    Chapter 13 Case
                                    )    Number 19-11098
DEONTAE M. MATTHEWS,                )
                                    )
          Debtor                    )
                                    )
```

**OPINION AND ORDER**

This Order considers the proper interest rate a chapter 13 debtor is required to pay to satisfy 11 U.S.C. §1325(b)(1)(A)[1] when he proposes to pay unsecured creditors in full while not committing all of his projected disposable income to his plan payments. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(L) and the Court has jurisdiction pursuant to 28 U.S.C. §1334. For the following reasons, the Court concludes the proper interest rate is

---

[1] Unless otherwise noted all statutory references refer to title 11 of the United States Code.

1

the Till formulaic approach. See Till v. SCS Credit Corp., 541 U.S. 465 (2004).

**FINDINGS OF FACT**

According to Debtor's chapter 13 means test, his annual income is above the median income and therefore his disposable income is determined by the means test. See §§1325(b)(3) and 707(b)(2). According to his means test, Debtor's monthly disposable income is $1,708.43. Dckt. No. 1 at 53. His monthly net income according to his bankruptcy schedules is $2,025.83. Dckt. No. 1, Sch. J.

Debtor proposes a chapter 13 plan with monthly plan payments of $830.00, well below his monthly disposable income. Dckt. No. 9. His plan further proposes to pay his general unsecured creditors in full or a pro rata share of $8,000.00, whichever is greater, at 5% interest, for sixty months. Dckt. No. 9, at ¶¶4(h) and 15.

Because Debtor's monthly disposable income of $1,708.43 on his means test and his net monthly income of $2,025.83 on his Schedule J are more than the $830.00/month he proposes to pay into his chapter 13 plan, the Chapter 13 Trustee ("Trustee") objects to confirmation of the plan arguing if Debtor opts to not commit all of his projected disposable income into the plan, he must pay

2

interest to his unsecured creditors.[2] The Trustee contends the proper interest rate should be the Till rate, namely prime plus an appropriate risk factor. Currently, the prime rate is 3.25%.

Debtor concedes, based upon this Court's Barnes decision, he must pay interest to his general unsecured creditors and proposes a 5% interest rate. Debtor's Br., Dckt. No. 21; see In re Barnes, 528 B.R. 501, 503 (Bankr. S.D. Ga. 2015). Notwithstanding his offer to pay interest at 5%, Debtor contends the federal judgment interest rate (currently approximately 0.12%) is the proper rate under these circumstances. Debtor's Br., Dckt. No. 21 at 9.

## CONCLUSIONS OF LAW

Pursuant to §1325(b) the Court may not confirm a chapter 13 bankruptcy plan over the objection of the trustee unless a debtor pays unsecured creditors in full or devotes all his projected disposable income to his bankruptcy plan payments. See §1325(b)(1)(A) and (B).[3] Debtor and Trustee agree Debtor is not

---

[2] Trustee argues if Debtor's monthly payments were increased to $2,025.00, he would pay all his creditors in approximately 23 months. See Trustee's Br., Dckt. No. 23 at 4.

[3] Section 1325(b)(1) states:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, <u>as of the effective date of the plan–</u>

3

proposing to contribute all of his projected disposable income to the plan, therefore the issue becomes whether the proposed plan satisfies the provisions of §1325(b)(1)(A).

There is a spilt of authority on whether interest is required under §1325(b)(1)(A) and, for those courts requiring interest, there is a further spilt on the appropriate interest rate. See In re Barnes, 528 B.R. at 506 (requiring interest); In re Cheatham, 2017 WL 5614910, at *1 (Bankr. M.D. Fla. Nov. 20, 2017)(same); In re McKenzie, 516 B.R. 661, 664 (Bankr. M.D. Ga. 2014)(same); In re Braswell, 2013 WL 3270752, at *4 (Bankr. D. Or. June 27, 2013)(same); In re Hight-Goodspeed, 486 B.R. 462, 465 (Bankr. N.D. Ind. 2012)(same); In re Parke, 369 B.R. 205, 208 (Bankr. M.D. Pa. 2007(same); contra In re Eubanks, 581 B.R. 583, 592 (Bankr. S.D. Ill. 2018)(interest is not required); In re Richall, 470 B.R. 245, 249 (Bankr. D.N.H. 2012)(same); In re

---

> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

§1325(b)(1)(emphasis added).

4

Stewart-Harrel, 443 B.R. 219, 222-24 (Bankr. N.D. Ga. 2011)(same); In re Ross, 375 B.R. 437, 444 (Bankr. N.D. Ill. 2007)(same). The courts requiring interest have considered different rates including: interest calculated pursuant to the formula set out in Till v. SCS Credit Corp., 541 U.S. 465 (2004)(adopting the formula or prime-plus approach to determine the proper rate, commonly known as the "Till" rate) and the federal judgment interest rate under 28 U.S.C. §1961.[4] Compare In re Braswell, 2013 WL 3270752, at *4 (Bankr. D. Or. June 27, 2013)(adopting Till rate), with In re Parke, 369 B.R. 205, 209 (Bankr. M.D. Pa. 2007)(applying the federal judgment interest rate).

This Court previously followed the line of cases concluding that interest must be paid under §1325(b)(1)(A) when an above median debtor chooses not to satisfy §1325(b)(1)(B) and opts to retain a portion of his monthly disposable income rather than devote it to

---

[4] This section provides:

> Interest shall be allowed on any money judgment in a civil case recovered in a district court. Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.

28 U.S.C. §1961(a).

5

his bankruptcy plan. See In re Barnes, 528 B.R. at 506. The issue raised in the current case is the appropriate interest rate.

Trustee argues the Till rate is most appropriate because it reflects the financial reality. The Till rate is formulaic, calculated by "looking to the national prime rate, reported daily in the press, which reflects the financial market's estimate of the amount a commercial bank should charge a creditworthy commercial borrower to compensate for the opportunity costs of the loan, the risk of inflation, and the relatively slight risk of default" then "adjust[ing] the prime rate accordingly [by considering] such factors as the circumstances of the estate, the nature of the security, and the duration and feasibility of the reorganization plan." Till, 541 U.S. at 479. Prime is currently 3.25% and Trustee argues a 1.5 to 3% increase above the prime rate is the appropriate rate to compensate Debtor's general unsecured creditors for their risk over the life of the plan.

Conversely, Debtor argues the federal judgment interest rate, currently 0.12%, is the appropriate rate contending it satisfies §1325(b)(1)(A) as it protects the time value of money while preventing unsecured creditors from receiving a windfall and preventing an absurd result: unsecured creditors potentially receiving more interest than both secured and priority creditors. Debtor argues this is more than an "unintended consequence," rather

6

he contends it is absurd, ambiguous and inconsistent with the Bankruptcy Code. See Debtor's Br., Dckt. No. 21 at 8-9.

For the following reasons, this Court concludes the Till interest rate is the appropriate rate to satisfy the valuation requirement of §1325(b)(1)(A) when an above median debtor opts to pay his unsecured claims in full over time without devoting all of his disposable income to his chapter 13 plan. In Till, the Supreme Court adopted the formula approach to determine the appropriate interest rate to pay a secured creditor whose claim was being cramdowned to the value of its collateral in a chapter 13. See Till, 541 U.S. at 478-79. At the time of filing their petition, the Till debtors owed a creditor $4,894.89 for a car worth $4,000.00. See id. at 470. In accordance with §506, the creditor's claim was cramdowned to the value of the car, limiting the creditor's secured claim to $4,000.00, with the remaining $894.89 balance being unsecured. Id. The Supreme Court was then tasked with determining the proper interest rate to be paid on the secured portion of the claim - - the rate of interest to ensure that the payment to the secured creditor over the life of the plan would have "a total 'value, as of the effective date of the plan,' that equal[ed] or exceed[ed] the value of the creditor's allowed secured claim," thus satisfying §1325(a)(5)(B)(ii). Id. at 474. The Supreme Court concluded:

7

> A debtor's promise of future payments is worth less than an immediate payment of the same total amount because the creditor cannot use the money right away, inflation may cause the value of the dollar to decline before the debtor pays, and there is always some risk of nonpayment. The challenge for bankruptcy courts reviewing such repayment schemes, therefore is to choose an interest rate sufficient to compensate the creditor for these concerns.

Till, 541 U.S. at 474.

Although the Till interest rate was developed in the context of a cramdown situation, its approach best represents the appropriate time value of money and inherent risk of default in a chapter 13 bankruptcy case. Unsecured creditors arguably have a higher risk exposure because they do not have collateral securing their debt in the event of default, and their claims rank lower in priority, thus delaying their receipt of payment. When an above median debtor opts to retain a portion of his disposable income, the length of his plan increases, delaying repayment and potentially increasing the risk of nonpayment. The Till approach recognizes the financial realities and risks presented in a chapter 13 bankruptcy and provides an interest rate consistent with market conditions. See In re Hight-Goodspeed, 486 B.R. 462, 465 (Bankr. N.D. Ind. 2012) ("If a debtor would prefer to have a more flexible or less rigorous budget it may choose to devote less than all of its disposable income to the plan; but the price for doing so, and thereby paying unsecured creditors over a longer period of time, is

8

that they must be paid in full with interest [because] interest represents the time value of money and compensation for the risk of default."); In re Braswell, 2013 WL 3270752, at *5 (Bankr. D. Or. June 27, 2013)("If these funds are not saved, or employed in some other manner protecting the creditors' interest, their risk is enhanced.").

The Till rate properly puts the focus on the debtor and "the circumstances of the estate, the nature of the security, and the duration and feasibility of the reorganization plan." Till, 541 U.S. at 478-79. Furthermore, this interpretation is consistent with similar language found in §1325(a) providing uniformity in chapter 13 cases, as the provisions have been interpreted by this Court to mean the same thing. See In re Barnes, 528 B.R. at 506 (punctuation omitted)("[T]he two phrases, 'the value, as of the effective date of the plan, of property to be distributed . . .' and 'as of the effective date of the plan - the value of property to be distributed . . .' . . . mean the same thing and both require a present value calculation. In re McKenzie, 516 B.R. at 664; In re Hight-Goodspeed, 486 B.R. at 465 (In this court's opinion, the meaning of those words is not changed by relocating the phrase 'as of the effective date of the plan.').");  In re Engle, 496 B.R. 456, 468 (Bankr. S.D. Ohio 2013) ("Like §1325(a)(4), §1325(a)(5)(B) refers to the value as of the effective date of the plan and thus requires the use of a discount rate to determine the present value

9

of a stream of payments.")(emphasis in original); see also generally §1191(c)(2)(using a similar statutory structure as §1325(b)(1)); but see In re Smith, 431 B.R. 607, 610 (Bankr. E.D.N.C. 2010)(addressing the liquidation analysis of §1325(a)(4) and finding it appropriate to use the federal judgment interest rate citing the "legal rate" used in §726(a)(5)).

For the reasons this Court previously stated in Barnes, requiring interest to be paid when a debtor chooses under §1325(b)(1) to not commit all of his disposable income to his plan payments is not an unfair or absurd result. See In re Barnes, 528 B.R. at 507-08 (recognizing anomalies may occur but holding it is not an absurd result given the time value of money, the delay of payment over the length of the plan, and the higher risk of nonpayment over the life of the plan); see Till, 541 U.S. at 474 (time value of money analysis); In re Hight-Goodspeed, 486 B.R. at 465 ("Since interest represents the time value of money and compensation for the risk of default . . . the court sees nothing untoward with such a result.").

Even if the Till rate results in differences of treatment between priority and nonpriority claimants and secured and unsecured creditors, this is not an absurd or unfair result considering the risk to unsecured creditors. See In re Barnes, 528 B.R. at 506 (citing In re McKenzie, 516 B.R. 661 (Bankr. M.D. Ga. 2014)(concluding that requiring interest under §1325(b)(1)(A) could

10

result in some anomalies but finding "there is 'nothing untoward in such a result, as interest represents the time value of money and the risk of default. As to the difference between priority and nonpriority unsecured claims, the court attributes the disparate effect on successive amendments to the Bankruptcy Code which have created certain distortions.'")).

Debtor argues the federal judgment interest rate is the proper rate if interest is required to be paid to unsecured creditors when a debtor chooses to retain a portion of his disposable income. In support of this argument, Debtor cites In re Parke, 369 B.R. 205 (Bankr. M.D. Pa. 2007)(chapter 13 case); In re Dow Corning Corp., 244 B.R. 678 (Bankr. E.D. Mich. 1999)(chapter 11 case); In re Cardelucci, 285 F.3d 1231 (9th Cir. 2002)(same); In re PG & E Corp., 610 B.R. 308 (Bankr. N.D. Ca. 2019)(same); In re Godsey, 134 B.R. 865 (Bankr. M.D. Tenn. 1991)(solvent chapter 7 case)); In re Strong, 12 B.R. 221 (Bankr. W.D. Tenn. 1981); In re Crotty, 11 B.R. 501 (Bankr. N.D. Tex. 1981); In re Architectural Design, Inc., 59 B.R. 1019 (W.D. Va. 1986)(using 26 U.S.C. §6621 for the proper interest rate for priority tax claims in §1129(a)(9)).[5] The Court does not find these cases persuasive.

---

[5] In response to Debtor's argument in support of the federal interest rate, the Trustee proposes the Georgia judgment interest rate. See Trustee's Brief, Dckt. No. 23 at 9; see O.C.G.A. §7-4-12(a)(providing the Georgia judgment interest rate is the prime rate published by the Board of Governors of the Federal Reserve System on the day of the entry of judgment plus 3 percent). The

First, this Court respectfully disagrees with the analogy in In re Parke that an allowed claim is like a federal judgment in this context and while the Parke court acknowledges that Till found §1325(a)(5)(B)(ii) to incorporate the principle of the time value of money, it did not discuss why the Till formula approach is inapplicable in the current situation. See In re Parke, 369 B.R. at 208.

The other cited cases involved chapter 7 and 11 cases and/or were decided before, or omit detailed discussion of, Till in this context. Furthermore, in the chapter 7 liquidation analysis, unsecured creditors may receive interest pursuant to §726(a)(5) which provides for "interest at the legal rate;" however, the language in §726(a)(5) specifying the "legal rate" contrasts with the §1325(b)(1) "effective date of the plan – value of property to be distributed" language which this Court has previously concluded connotes a "time value of money" concept. See In re Barnes, 528 B.R. at 508. Unlike the Till approach, the federal judgment interest rate does not reflect the market conditions and risks involved in chapter 13 cases, rather it is based upon the weekly

---

Trustee argues, if the Court were to apply a judgment interest rate, the Georgia judgment interest rate is more appropriate because a state judgment is the only nonbankruptcy relief available to Debtor's creditors; that Debtor's creditors could only realize judgment from Georgia state courts in the event of default. The Court need not address this argument since it agrees with the Trustee that Till is the appropriate interest rate, not a judgment interest rate.

12

AO 72A
(Rev. 8/82)

average one year constant maturity Treasury yield. See 28 U.S.C. §1961(a); In re Hockenberry, 457 B.R. 646, 658-59 (Bankr. S.D. Ohio 2011)(noting Till and concluding "using the federal judgment rate to discount a stream of payments to present value would not be appropriate in the context of the best-interest-of-creditors test with respect to unsecured claims in Chapter 11 cases of insolvent debtors.").

This Court finds the factors to be considered when calculating the Till rate best reflect the time value of money, especially when a debtor is opting to satisfy §1325(b)(1)(A) while not committing all of his disposable income to the plan.

The Court must now determine the specific rate of adjustment of the prime-plus rate set forth in Till. See Till, 541 U.S. at 479 ("Because bankrupt debtors typically pose a greater risk of nonpayment than solvent commercial borrowers, the approach then requires a bankruptcy court to adjust the prime rate accordingly."). Providing factors to consider, the Supreme Court found the adjustment to be within the bankruptcy court's area of expertise and stated, "[t]he appropriate size of that risk adjustment depends . . . on such factors as the circumstances of the estate, the nature of the security, and the duration and feasibility of the reorganization plan." Id. Though the Supreme Court did not endorse a particular risk adjustment, the Court noted

13

"other courts have generally approved adjustments of 1% to 3%." Id. at 480.

Utilizing these factors, Debtor should be afforded the opportunity to modify his chapter 13 plan to propose the appropriate Till rate of interest as of confirmation.[6] IT IS THEREFORE ORDERED Trustee's Objection to Confirmation is SUSTAINED and the hearing on confirmation is continued to November 23, 2020 affording Debtor the opportunity to amend his plan, if he deems it appropriate, on or before Wednesday, October 21, 2020.[7]

**[END OF DOCUMENT]**

---

[6] Under Hamilton v. Lanning, 560 U.S. 505, 518 (2010), "effective date of the plan" in §1325(b)(1) is the date on which the plan is confirmed. Hamilton, 560 U.S. at 518.

[7] Noting Debtor may still opt to pursue confirmation of his current plan contending it satisfies the terms of this Order.

14